UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

UNITED STATES OF AMERICA,

Plaintiff,

v.

CARLOS TORRES-GOMEZ,

Defendant.

Case No. 4:26-cr-00160-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Before the Court is Defendant Carlos Torres-Gomez's Motion to Revoke Detention Order. Dkt. 21. The Government opposes Torres-Gomez's Motion (Dkt. 26), and Torres-Gomez filed his reply to that opposition (Dkt. 27). The Court has reviewed the record in this case, including but not limited to the Parties' briefs, the transcript of the Initial Appearance and Arraignment before Chief Magistrate Judge Raymond E. Patricco (Dkt. 18), the transcript of the detention hearing before the same (Dkt. 19), and the pretrial services report (Dkt. 20, Dkt. 20-1). For the reasons discussed below, the Court denies Torres-Gomez's Motion and affirms the Order of Detention (Dkt. 16).

## II. BACKGROUND

On June 23, 2026, Torres-Gomez was indicted on one count of Deported Alien

Found in the United States, in violation of 8 U.S.C. § 1326(a) & (b). Dkt. 2. On June 29, 2026, the Government filed a Motion for Detention. Dkt. 6. On June 30, 2026, Torres-Gomez appeared for his initial appearance, and a detention hearing was scheduled in front of Judge Patricco on July 7, 2026. Dkt. 7. After hearing the Parties' proffers and oral argument, Judge Patricco addressed all the 18 U.S.C. § 3142(g) factors and ordered Torres-Gomez detained pending trial, finding there were no conditions that could be imposed that would reasonably assure he would appear in court as directed. On July 31, 2026, Torres-Gomez appealed the Order of Detention to the undersigned. Dkt. 21.

## III. LEGAL STANDARD

Torres-Gomez's motion is brought pursuant to 18 U.S.C. § 3145(b), which provides that "if a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of that order." *See also* Fed. R. Crim. P. 59(a). The district court must promptly determine the motion. 18 U.S.C. § 3145(b). A district court reviews the magistrate judge's order de novo. *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). "[T]he district court is not required to start over in every case" and is not required to "proceed as if the magistrate's decision and findings did not exist." *Id.* Rather, the district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.* A district court is also not required to hold an evidentiary hearing in reviewing a magistrate court's detention order when no new evidence is offered. *Id.* Here, the Court finds an additional evidentiary hearing is not necessary because Torres-Gomez has offered no new evidence.

## IV. ANALYSIS

### A. The Bail Reform Act

The Bail Reform Act of 1984 outlines procedures for detaining a defendant pending trial. 18 U.S.C. § 3142(c), (e)–(f). Upon the Government's motion, the court—usually a magistrate judge—will first determine if a detention hearing is authorized under the Act. 18 U.S.C. § 3142(f). This initial determination "limit[s] the circumstances under which [pretrial] detention may be sought." *United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019). The court may only grant the Government's motion for a detention hearing if: (1) the defendant is charged with one of five serious crimes in § 3142(f)(1); (2) poses a serious risk of flight under § 3142(f)(2)(A); (3) or poses a serious risk of obstruction or intimidation under § 3142(f)(2)(B). Absent one of these conditions, the court will deny the Government's motion for a detention hearing.

In this case, Torres-Gomez was indicted for illegally reentering the United States after removal in violation of § 1326. This charge is not one of the five serious crimes enumerated under § 3142(f)(1). Accordingly, the Government is only entitled to a detention hearing if Torres-Gomez poses a serious risk of flight, obstruction, or intimidation. Before Judge Patricco, the Government asserted Torres-Gomez posed a serious risk of flight under § 3142(f)(2)(A).

Neither the Supreme Court nor the Ninth Circuit have outlined the factors to consider in determining a serious risk of flight under § 3142(f)(2)(A). Although the Ninth Circuit in *United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015), identified the factors a court should consider in determining the risk of non-appearance under §

3142(g), the text of § 3142 suggests risk of flight under § 3142(f)(2)(A) is narrower than a risk of non-appearance under § 3142(g). *See United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1137 (D. Idaho 2023) (citing *United States v. White*, 2021 WL 2155441, at *8 (M.D. Tenn. 2021)). Recognizing the difference between the risk of non-appearance and the risk of flight, the Magistrate Judge in *Figueroa-Alvarez* carefully and thoroughly outlined the analysis for determining a serious risk of flight under § 3142(f)(2)(A). This Court finds that methodology helpful in this case.

In *Figueroa-Alvarez*, the Court applied the preponderance of evidence standard, ruling that to show a serious risk of flight under § 3142(f)(2)(A), the Government must demonstrate only that it is more likely than not there is a serious *risk* the defendant will flee—not that it is more likely than not the defendant *will* flee. 681 F. Supp. 3d at 1138. To meet this burden, the court ruled that "the Government must present concrete information not mere conclusory allegations." *Id.* (citation modified). Relying in part on *Santos-Flores*, the court identified four common factors, and related subfactors, for consideration in determining whether a defendant poses a serious risk of flight, but noted that the analysis is based on the totality of evidence and no one factor is dispositive. *Id*. at 1140 (citing Lauryn P. Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 703–04 (2018)). The Court will consider these factors today.

Under the *Figueroa-Alvarez* analysis, the Court considers a defendant's incentives to flee based on the potential punishment and the weight of evidence against the defendant. *Id.* at 1141. The weight of the evidence, however, is "the least persuasive factor" because it "must acknowledge the defendant's pretrial presumption of innocence." *Id.*; *see also*

*United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985) (requiring consideration of presumption of innocence). Regardless, "the weight of the evidence in most § 1326 prosecutions is strong" because a defendant may not challenge his prior removals from the United States without proof he previously exhausted his administrative remedies; this required showing makes defending against a § 1326 charge difficult. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1141. Further, although a defendant's "dangerousness" is not relevant, defendants with a "significant" criminal history may face years of imprisonment for violating § 1326, providing a greater incentive to flee. *Id*. at 1142.

Further, under the *Figueroa-Alvarez* analysis, the Court considers the defendant's ability to flee, including whether he has finances to fund flight, access to fraudulent identity documents to facilitate "clandestine travel," and ties to persons who could assist his flight. *Id.* The Court also considers the defendant's ties to the jurisdiction and to the United States, including the defendant's length of residence, his community ties, his ability to earn an income legitimately, and the presence of his family members. *Id.* Finally, the Court considers a defendant's reliability and trustworthiness. Factors bearing on these characteristics include whether the defendant has previously violated the terms of supervised release, parole, or probation; whether he has disregarded a court order to appear at a designated time and place; and whether he abuses alcohol or controlled substances. *Id.* at 1144–45.

**B. A Detention Hearing was Appropriate**

Torres-Gomez argues the Government failed to show he: (1) presents a serious risk of intentional flight; (2) is not reliable to appear for criminal court; (3) has insufficient ties

to the United States and the District of Idaho; and (4) is capable of fleeing. *See generally* Dkt. 21. The Court disagrees and concludes Judge Patricco correctly ruled a detention hearing was appropriate because the Government proved by a preponderance of evidence in its initial Motion for Detention (Dkt. 16) that Torres-Gomez posed a serious risk of flight.

1. *Incentive to Flee*

As Judge Patricco held, the evidence in this case shows Torres-Gomez has ample incentive to flee.

Although a defendant is presumed innocent, *Motamedi*, 767 F.2d at 1407–08, if the weight of evidence against the defendant is strong, then he may perceive a likelihood of conviction, which suggests a greater incentive to flee. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1141. Further, alien defendants facing a "range of imprisonment between 0 to 6 months in prison" provides "little incentive to flee standing alone." *Id.* But "[a]lien defendants facing sentences measured in years for violations of § 1326, to be followed by near certain deportation, have a far greater incentive to flee." *Id.* at 1142.

Here, the evidence in support of a conviction is strong. The grand jury considered the evidence and found probable cause to indict Torres-Gomez. Dkt 2. He admitted to being a citizen of Mexico. Dkt. 19, at 24:18–19. He has two prior illegal reentry convictions, and Torres-Gomez's fingerprints match the person previously convicted as well as his A-File.[1] *Id.* at 24:19–21. Further, the maximum penalties that could be imposed for this offense, if

[1] An Alien File ("A-File") is an individual's comprehensive immigration file which "contain[s] official record material about each individual for whom DHS has created a record under the INA." 82 Fed. Reg. 43556, 43559 (Sept. 18, 2017). Specific data elements may include the individual's full name, aliases used, fingerprints, date of birth, and other identifying information. *Id.*

convicted, is up to 20 years of imprisonment, followed by 3 years of supervised release, a $25,000 fine, and a special assessment of $100.

For his part, Torres-Gomez argues his realistic sentence will be modest. Dkt. 21, at 16. He claims if he is convicted, his sentence will likely be measured in months rather than years because the guideline range is between fifteen and twenty-one months—with a high likelihood of receiving credit for time served. *Id.* However, this conclusion is speculative. What remains concrete is if he proceeds to trial and is convicted, Torres-Gomez's estimated offense level is twelve with a corresponding guideline range of fifteen to twenty-one months of imprisonment, he faces deportation, and this Court has not promised to give him credit for time served. Even if the sentence Torres-Gomez faces if convicted will not be measured by a range of years, a sentence between one and two years of imprisonment is considerably longer than the zero to six month example given in *Figueroa-Alvarez*. This creates a significant incentive to flee.

Although the facts here do not necessarily predict that Torres-Gomez will flee, they do demonstrate an *incentive* to do so sufficient enough for this factor to modestly favor detention.

2. *Reliability and Trustworthiness*

Torres-Gomez argues this factor supports his non-detention by explaining he has never failed to appear in court (Dkt. 21, at 11–12), and he has no issues with substance abuse (*Id.*). The Court commends Torres-Gomez for these efforts, and these sub-factors undoubtedly weigh in his favor when considering this factor as a whole. However, the

record as a whole demonstrates Torres-Gomez's history of unreliability and untrustworthiness is sufficient to satisfy the applicable standard.

For example, Torres-Gomez has shown a lack of reliability by illegally entering the country numerous times—requiring removal in 2011, 2012, 2018, and twice in 2019. Dkt. 20 at 2–3. *Figueroa-Alvarez* explains the significance of this: "Multiple illegal reentries after removal demonstrate greater disrespect for court orders and the law," and "multiple illegal reentries, standing alone, [are construed to be] modest proof of serious risk of flight." 681 F. Supp. 3d at 1144. To be clear, the Court does not hold that Torres-Gomez's numerous reentries and removals, standing alone, are sufficient to place this factor in favor of the Government. Instead, the Court recognizes they constitute "modest proof," *Id.*, that Torres-Gomez is unreliable and untrustworthy under the applicable standard.

Continuing the analysis of this factor, Torres-Gomez's criminal history also weighs against reliability and trustworthiness. His criminal history includes: a felony conviction in 2010 for delivering a controlled substance; a misdemeanor conviction in 2010 for failing to purchase a driver's license; and two felony convictions of illegal reentry under 8 U.S.C. § 1326—one in 2018 and the other in 2019. Dkt. 20 at 2–3. Even more, he has twice violated probation orders. Dkt. 19, at 25:18–20. These numerous instances of disregarding the law and violating court orders demonstrate unreliability on Torres-Gomez's part. Although he has shown reliability by appearing in court and abstaining from substance abuse, this is undercut by his persistent disregard for the nation's laws: he continually breaks laws, reenters after removal, and violates court orders.

Both Torres-Gomez and the Government have provided compelling facts and arguments. But the Court ultimately finds the Government has sufficiently carried its burden in demonstrating Torres-Gomez is unreliable and untrustworthy under the applicable standard. His illegal reentries, criminal history, and probation violations work cumulatively to move the needle in the Government's favor regarding this factor.

3. *Community and Family Ties*

Torres-Gomez argues this factor also supports his continued pre-trial release by claiming his history of repeatedly returning to the United States unlawfully indicates a desire to return to Idaho rather than a desire to flee. Dkt. 21 at 13–15. The Court agrees and finds this factor weighs against the existence of a serious risk of flight.

Torres-Gomez has lived in Idaho for fourteen years, except during the periods when he was removed from the United States and for a total of four months when he lived in California and Wyoming. Dkt. 20-1, at 2. He has been in a relationship with an Idahoan for almost the entirety of that time, and they are raising two minor children together. *Id.* He has maintained stable employment in Idaho for the past five years, and his employer is willing to allow Torres-Gomez to continue working if released. *Id.*

The Court finds these family and community ties to the United States and the District of Idaho adequate to find this factor weighs in favor of Torres-Gomez.

4. *Ability to Flee*

The Government has sufficiently demonstrated Torres-Gomez's considerable ability to flee. He has sufficient resources and numerous people positioned to facilitate flight both inside and outside the country.

For example, Torres-Gomez has people positioned to aid flight in Idaho, Utah, and Mexico. Dkt. 20-1 at 1–2; Dkt. 18, at 12:1–3. This demonstrates his ability to flee within the District, outside the District, or even beyond the country's borders. Nothing would meaningfully stop him from travelling between these areas over a long period of time should he flee. Further, his longtime partner in Idaho, Ms. Sanchez-Rodriguez, is employed full-time, has three sources of income, and has offered to financially support Torres-Gomez through trial. Dkt. 19, at 5:16–6:12, 10:13–18. The two own the trailer they live in. *Id.* at 5:21–22. His current employer will allow him to return to work if released. Dkt. 20-1, at 2. He owns a car. Dkt. 27, at 6. He also has a Mexican passport. Dkt. 20-1, at 2. These facts show he not only has sufficient resources capable of facilitating flight, but he also has close ties with people who have sufficient resources to facilitate such flight.

Torres-Gomez argues he has reported "no financial resources," and "[t]here is no evidence he has ever possessed or used a false identity." Dkt. 21, at 17. The Government has not shown that Torres-Gomez possesses false documents that would facilitate flight, and this subfactor, therefore, weighs in his favor. However, the Court notes that Torres-Gomez does not need fraudulent documents to flee within the District or the United States, and he has continually shown the ability to cross national borders without such documents. As such, the Court gives this subfactor less weight than the ones previously mentioned.

Working together, the facts sufficiently demonstrate Torres-Gomez's ability to flee is adequate for this factor to weigh against him. The Court emphasizes that it does not reach the question of whether these individuals *will* aid Torres-Gomez in fleeing. It instead holds

that a preponderance of the evidence shows they are positioned to do so, especially when considered alongside Torres-Gomez's own resources.

In conclusion, and after carefully weighing the factors, the Court finds the Government has sufficiently met its burden in showing a detention hearing was appropriate and Torres-Gomez's continued detention is appropriate at this time. The Court is convinced no condition or combination of conditions exist which would reasonably assure Torres-Gomez's appearance in court. To be sure, Torres-Gomez does not have an *egregious* criminal record nor are there any factors which *overwhelmingly* mandate detention. Torres-Gomez has made good arguments on his own behalf and there are some mitigating factors present. However, upon review, the Court finds the collective weight of all the relevant factors sufficiently supports the adequacy of the hearing and Judge Patricco's subsequent order.

## V. CONCLUSION

Having conducted a de novo review of the record in this matter and having considered the Parties' arguments at the detention hearing and the Parties' briefs on appeal, the Court concludes concrete information was produced showing the Government met its burden and proved by a preponderance of evidence that Torres-Gomez poses a serious risk of flight.

The Court is further convinced no set of conditions would reasonably assure his appearance at court. Accordingly, Torres-Gomez's Motion to Revoke Detention Order (Dkt. 21) is DENIED and the Order of Detention (Dkt. 16) shall remain in effect.

## VI. ORDER

IT IS ORDERED that:

1. Defendant Torres-Gomez's Motion to Revoke Detention Order (Dkt. 21) is **DENIED**.
2. Chief Magistrate Judge Raymond E. Patricco's Order of Detention (Dkt. 16) is **AFFIRMED**.

DATED: August 31, 2026

David C. Nye
U.S. District Court Judge